UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL RODRIGUEZ, | Case No. 2:17-cv-02344-RFB-DJA |
| Plaintiff, | **ORDER** |
| v. | |
| NAPHCARE, INC., *et al.*, | |
| Defendants. | |

Before the Court are Defendant Las Vegas Metropolitan Police Department's ("LVMPD") Motion for Summary Judgement (ECF No. 354) and the Motion for Summary Judgement (ECF No. 355) by Defendants Dr. James Anthony, Dr. Harry Duran, Eric Lopez, Kendra Meyer, Dr. Raymond Mondora, Dr. Larry Williamson, and Naphcare, Inc. (collectively "Naphcare Defendants"). For the reasons below, both motions are granted.

I. **FACTUAL BACKGROUND**

The Court finds the following facts to be undisputed.

Plaintiff Michael Rodriguez at all relevant times was in the custody of LVMPD at the Clark County Detention Center ("CCDC"). At all relevant times, Defendant Naphcare, Inc., was contracted to provide medical care at CCDC and was responsible for Mr. Rodriguez's care. While incarcerated, Mr. Rodriguez complained of pain that originated from a prior motor vehicle accident. Mr. Rodriguez's treating physician, Defendant Dr. Rayond Mondora, initiated a pain management regimen (the "initial regimen") involving medications and narcotic trigger point injections ("TPIs"). After several years of such treatment, Dr. Mondora ceased being Mr. Rodriguez's physician.

1 On September 1, 2015, Mr. Rodriguez was removed from the sick call schedule and medical staff stopped administering TPIs. Mr. Rodriguez requested medical attention for his pain. On February 25, 2016, Dr. Williamson conducted his first exam of Mr. Rodriguez. He listened to Mr. Rodriguez's concerns and examined him for behaviors that indicate experiencing pain. Following the exam, Dr. Williamson shifted Mr. Rodriguez from a drug regime of Tramadol, Ibuprofen, and Robaxin to Meloxicam and Carbamazepine. Dr. Williamson also scheduled Mr. Rodriguez for a follow up to consider adding Amitriptyline.

On March 14, 2016, Dr. Williamson conducted a follow up physical exam. Following this, Dr. Williamson assessed Mr. Rodriguez with chronic pain, added Amitriptyline to his regime, and discussed trying Gabapentin with Mr. Rodriguez.

On May 24, 2016, Dr. Williamson reviewed Mr. Rodriguez's medical records, including his 2006 CT scan and conducted another physical exam. During the exam, Dr. Williamson identified a trigger point and offered to prescribe Mr. Rodriguez Baclofen.

In June 2017, Dr. Williamson had a follow-on conversation with Mr. Rodriguez. On September 19, 2017, Dr. Williamson conducted another physical exam. At this time, Mr. Rodriguez requested to return to Tramadol, but Dr. Williamson declined to do so because Mr. Rodriguez previously reported Tramadol as ineffective. Later, Dr. Williamson ordered x-rays of Mr. Rodriguez's back and reviewed them.

In October 2017, Dr. Williamson prescribed Mr. Williamson a course of muscle relaxants, which may have included different medications than those previously attempted.

## II.  PROCEDURAL HISTORY

On September 6, 2017, Plaintiff, a state prisoner proceeding *pro se*, filed a civil rights action under 42 U.S.C. § 1983. ECF No. 1. With leave of Court, Plaintiff filed the operative, Second Amended Complaint ("SAC") on December 7, 2018. ECF No. 84. After screening the SAC, the Court only allowed two of the counts alleged to proceed: one for violation of Plaintiff's Fourteenth Amendment right to adequate pretrial medical care against the Naphcare Defendants and the other, a claim for municipal liability against LVMPD. ECF No. 146.

On May 26, 2022, the Court extended the discovery deadline to September 12, 2022, and the dispositive motion deadline to October 12, 2022. ECF No. 303. On November 29, 2022, the Naphcare Defendants filed a Motion for Summary Judgement, which LVMPD joined. ECF Nos. 320, 321. LVMPD then filed its own Motion for Summary Judgement. ECF No. 330. After substantial delays and the appearance of counsel for Plaintiff, the motions were fully briefed. ECF Nos. 323, 328, 333, 341, 342, 343, 345, 346, 347. On September 25, 2023, the Court granted Plaintiff's motion to reopen discovery (ECF No. 345-1) and denied the motions for summary judgment without prejudice. ECF No. 349. Discovery reopened and ran from October 20 to December 26, 2023. ECF No. 353.

On January 9, 2024, Defendants filed the instant Motions for Summary Judgement. ECF Nos. 354, 355. These motions were fully briefed. ECF Nos. 356, 357, 358, 359. On August 19, 2024, the Court held a hearing on the motions. ECF No. 360. The Court's Order follows.

### III.   LEGAL STANDARDS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325; see also United Steelworkers v. Phelps Dodge Corp., 865 F.2d

1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim."). However, it is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## IV.   DISCUSSION

The Court now turns to the merits of the pending Motions for Summary Judgement. Both the Naphcare Defendants and LVMPD argue *inter alia* that Mr. Rodriguez has failed to establish a genuine issue of material fact as to the Defendants' deliberate indifference to his medical needs.

Mr. Rodriguez's claim under 42 U.S.C. § 1983 against the Naphcare Defendants requires showing a violation of a constitutional right by the defendants. West v. Atkins, 487 U.S. 42, 48 (1988); see also Lopez v. Dep't of Health Services, 939 F.2d 881, 883 (9th Cir. 1991) (discussing liability under § 1983 for private actors); Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012) (explaining liability for private entities under § 1983). Similarly, Mr. Rodriguez's claim against LVMPD requires demonstrating that he had a constitutional right of which he was deprived. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). Both claims are underpinned by Mr. Rodriguez's assertion that he was provided inadequate medical care while incarcerated at CCDC.

Because the Court finds this common question of deliberate indifference resolves both pending Motions for Summary Judgement, the Court confines its analysis to that issue.[1] See

---

[1] The Prison Litigation Reform Act ("PLRA") requires an incarcerated plaintiff to exhaust their administrative remedies before filing a lawsuit concerning prison conditions. 42 U.S.C. § 1997e(a). As a threshold issue, the Court resolves the sufficiency of Mr. Rodriguez's exhaustion. See Woodford v. Ngo, 548 U.S. 81, 85 (2006) (explaining that under the PLRA, exhaustion is a mandatory issue for the court to resolve before addressing the merits."). The Ninth Circuit has explained that "[a] grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir.

Celotex, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). For the following reasons, the Court grants both Motions for Summary Judgement.

### A. The Fourteenth and Eighth Amendments

The Court first considers the appropriate legal standard. LVMPD argues that Plaintiff's prior conviction means that the stricter Eighth Amendment standard should control. Mr. Rodriguez argues that, because Plaintiff was not yet sentenced at the relevant times, he should be instead protected by the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment governs the conditions of confinement for pre-trial detainees. Gordon v. County of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Whereas the Cruel and Unusual Punishment Clause takes over for prisoners serving sentences. Farmer v. Brennan, 511 U.S. 825, 828 (1994). This distinction is material, as the Eighth and Fourteenth Amendment utilize different analytical frameworks for evaluating claims. Compare Gordon, 888 F.3d at 1125 (listing elements of the Fourteenth Amendment claim) with Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (same for the Eighth Amendment), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082 83 (9th Cir. 2014). The moment of conviction, not sentencing, is the constitutional pivot point between these amendments. Resnick v. Warden Hayes, 213 F.3d 443, 448 (9th Cir. 2000).

The Parties do not dispute the relevant dates in Mr. Rodriguez's underlying state criminal case and have provided part of that record as evidence. For completeness, the Court also takes judicial notice of the docket in Mr. Rodriguez's underlying state criminal case. Fed. R. Evid. 201 (providing that courts may *sua sponte* take notice of adjudicative facts); State of Nevada v. Michael Rodriguez, Case No. C-10-269884-1 (Eighth J. Dist. Ct. Nev.). The Court finds the following undisputed facts. On September 25, 2015, following a seven day trial, Mr. Rodriguez was convicted by a jury of his peers for various crimes. Mr. Rodriguez was not sentenced until November 18, 2020—approximately five years later.

As discussed above, "[t]he status of the detainees determines the appropriate standard for

---

2010), superseded on other grounds by California statute. Here, the Court finds the extensive record of detailed grievances is ample to put Defendants on notice.

- 5 -

evaluating conditions of confinement." Vazquez v. County of Kern, 949 F.3d 1153, 1163 (9th Cir. 2020) (quoting Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987)). The Ninth Circuit has been clear for a "plaintiff . . . who is convicted and awaiting sentencing, the Eighth Amendment supplies the relevant standard." Norbert v. City & County of San Fransico, 10 F.4th 918, 927 (9th Cir. 2021). At their broadest extent, Plaintiff's claim originates with his removal from the sick call schedule on September 1, 2015. Mr. Rodriguez was convicted twenty four days later. Therefore, the Fourteenth Amendment protected him until his September 25th conviction and the Eighth Amendment governs the remainder of his claim.[2]

### B. Deliberate Indifference

With that legal framework in mind, the Court turns to the merits of the Motions for Summary Judgement. For the following reasons, the Court finds that Plaintiff has failed to produce evidence creating a genuine issue of material fact as to his claims of deliberate indifference.

#### i. Fourteenth Amendment

The Court evaluates pre-trial medical deprivation claims under an objective deliberate indifference standard. Gordon, 888 F.3d at 1125. To prevail, Mr. Rodriguez must produce evidence capable of showing: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." Id. The third element requires the defendant's conduct to be "objectively unreasonable," a test that turns on the facts and

---

[2] The Court notes that while Plaintiff correctly identifies that the Court's Screening Order of the SAC construed his claim as proceeding under the Fourteenth Amendment Due Process Clause, that does not change the result. First, the SAC raised both Fourteenth and Eighth Amendment arguments and, while the Screening Order found the Eighth "inapplicable" the Court may correct such a legal error. See Fed. R. Civ. Pro. 60 (permitting a court to correct mistakes). Second, Plaintiff was on notice and had the opportunity to brief this issue. Third, the standards for both claims are highly similar. Fourth, the Court finds the same evidentiary failure to show inadequate medical care would affect his claim regardless of which amendment the Court proceeded under. Finally, even were the Court to proceed under the Fourteenth Amendment, Mr. Rodriguez's claims would fail because he had no such constitutional right after September 25, 2015. See Norbert, 10 F.4th at 927.

circumstances of each particular case. Id.

The following facts are undisputed. On September 1, 2015, Mr. Rodriguez was removed from the sick call. From that date, he ceased receiving TPIs but continued to receive the other pain management drugs proscribed by Dr. Mondora. Plaintiff has provided sworn testimony in his verified complaint that he suffered pain from then through his conviction on September 25th. See California Pro-Life Council, Inc. v. Randolph, 507 F.3d 1172, 1176 (9th Cir. 2007) (explaining the circumstances under which a verified complaint may be used as evidence at summary judgement), abrogated on other grounds by John Doe No. 1 v. Reed, 561 U.S. 186 (2010). Defendants have provided unrebutted, competent evidence that the initial regimen proscribed by Dr. Mondora—including the TPIs—was not the only medically appropriate course of action. On November 26, 2015, Plaintiff filed his first grievance concerning his pain management.

While a plaintiff must "prove more than negligence but less than subjective intent[,]" Gordon, 888 F.3d at 1125, the Court finds that Plaintiff has failed to make any such showing. First, the Court finds that the care Plaintiff received from September 1st to 25th, though not his preference, was adequate at the time. Defendants utilized a reasonable alternative treatment and had no reason to believe it was not working for Plaintiff. Second, there is no evidence that between September 1st to 25th that Defendants were aware of Mr. Rodriguez's untreated pain at all. Under these circumstances, the Court finds that Plaintiff has provided no evidence that Defendants conduct was "objectively unreasonable" during this period. Id.

### ii. Eighth Amendment

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment— and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082 83 (9th Cir.

2014). The Eighth Amendment is violated when state actors "deny, delay or intentionally interfere" with needed medical treatment. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). Similarly, such officials may not choose a course of treatment that is "medically unacceptable under the circumstances." Snow, 681 F.3d at 988 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

The Court finds the following additional undisputed facts relevant to the Eighth Amendment claim. On November 26, 2015, Plaintiff filed a medical grievance with Naphcare stating "I'd like to see Dr. M[o]ndora about getting my medication renewed and follow up on my trigger point injections that were never provided from September. Thank you." The next day, Mr. Rodriguez was placed on sick call. On December 3, 2015, Plaintiff filed a non-medical grievance with LVMPD renewing his concerns that he had not seen a doctor and stating:

> "I am trying to prevent my [unintelligible] medications from expiring, I submitted a request and have no appointment with the doctor. It requested renewals as far as 2-weeks prior to my meds expiring only to be told its too early. . . . yet just today my Sulfacrate expired and had to be renewed by the charge nurse. My trigger point and medication is for a chronic condition . . . . I've been on these meds for close to 2 years and it causes great pain and discomfort when I am forced off my medication."

On February 18, 2016, he filed a medical grievance asking "to see Dr. M[o]ndora about additional trigger point injections along with renewing all 3 of my medications . . . which I take for my severe pain." On February 22, 2016, Mr. Rodriguez filed another non-medical general grievance with LVMPD stating:

> "I submitted a medical kite on 2/18/16 (see attached) requesting to see Dr. M[o]ndora for additional trigger point injections and to have my medications all (3) renewed as they expire the first part of March. Since I've been on these medications, I've had them at times renewed by my pill call nurse [and] other times I was told I had to see the doctor. Being that it takes a long time to see the doctor, I kited in advance yet not only was my first request ignored but I'm told my medications are current. . . . I've been trying to get my trigger point injections by Dr. M[o]ndora . . . since Sept 2015. I am at a loss as how to proceed as my chronic condition is well documented and your assistance in resolving my request for both issues would be greatly appreciated as the severe pain prevents me from sleeping or being able to walk at times. Thank you."

On February 25, 2016, he was seen by Dr. Williamson. Once Dr. Williamson saw Mr. Rodriguez,

he reevaluated Plaintiff's pain regimen. While Dr. Williamson did not resume TPIs, he engaged in an ongoing series of discussions, exams, reevaluations, and adjustments to Mr. Rodriguez's pain management regimen. Defendants have provided unrebutted, competent expert evidence that the treatments provided by Dr. Williamson were medically reasonable. This process was ongoing when the lawsuit was filed.

The Court finds that Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to Plaintiff's deliberate indifference claim. Celotex, 477 U.S. at 325. The burden now shifts to Mr. Rodriguez to produce evidence to demonstrates that an issue of fact exists as to whether Defendants acted with deliberate indifference to his medical needs. United Steelworkers, 865 F.2d at 1542-43. The Court finds that Plaintiff has failed to produce evidence capable of showing a violation of his Eighth Amendment rights.[3] This conclusion is underpinned by several findings.

First, the Court finds no inappropriate delay in care in this case. Delay alone is insufficient to state a claim for deliberate indifference. Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). The delay must evince a substantial indifference, that is it rises to the level of an "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105. The most relevant period of delay runs from Plaintiff's September 25th conviction to his first appointment with Dr. Williamson on February 25th. Prior to September 25th, the above Fourteenth Amendment analysis governs. After February 25th, Mr. Rodriguez was under the active care of Dr. Williamson.

The Court now considers the record of events between September 25, 2015, and February 25, 2016. Mr. Rodriguez filed grievances on November 26th, December 3d, February 18th, and February 22d. The first three, however, only indicated that he wanted to renew the prescriptions for his medications and seek a "follow up" with Dr. Mondora on his TPIs. While he flagged that he could experience "substantial pain" without renewed medicine, the first grievance that indicates that he was presently experiencing pain was on February 22, 2016. The February 22d grievance

---

[3] Judges are not "pigs, hunting for truffles buried in briefs" or the record. Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991)). Nevertheless, the Court has reviewed the record, identified and considered the full record. Regardless Plaintiff has failed to carry his burden.

was filed with LVMPD instead of Naphcare, but on February 24th a LVMPD employee placed Mr. Rodriguez on sick call. On February 26th, he was seen by Dr. Williamson.

While the existence of "chronic and substantial" untreated pain meets the objective element, a defendant must not just "know of" the pain but must also "disregard" that pain to meet the subjective element. See Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). On these facts, the Court finds it undisputed that the Defendants were on notice of Plaintiff's present experience of pain for four days before he was seen by Dr. Williamson. The Court finds that Plaintiff has presented no evidence that any defendant disregarded his pain during the four days between his February 22d grievance and his February 26th appointment. During this whole period, Mr. Rodriguez was provided a medically reasonable pain management regimen. He was swiftly taken to Dr. Williamson once he voiced that he was experiencing pain. Therefore, Plaintiff cannot meet the subjective standard. See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."), overruled on other grounds by WMX Techs. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

Second, the Court finds that Dr. Williamson's treatment was medically appropriate. "A difference of opinion does not amount to a deliberate indifference." Sanchez, 891 F. 2d at 242. The undisputed evidence shows that Dr. Williamson took Mr. Rodriguez's pain seriously and engaged in a long-running, interactive process to diagnose, monitor, and treat it. The undisputed evidence is that Dr. Williamson continued to make reasonable medical decisions. The undisputed evidence shows that TPIs were not medically necessary or even advisable. Mr. Rodriguez may have seriously disagreed with Dr. Williamson's testing and course of treatment, but that disagreement does not amount to an Eighth Amendment violation. See Toguchi, 391 F.3d 1051, 1058-60; Sanchez, 891 F.2d at 242.

In sum, the Court finds that Defendants carried their burden to identify the absence of a genuine dispute of material fact regarding deliberate indifference and that Plaintiff failed to produce any evidence to create an issue of fact on that issue. See United Steelworkers, 865 F.2d at 1542-43. Thus, the Court finds that summary judgement on Plaintiff's deliberate indifference

claims is warranted. See Celotex, 477 U.S. at 325. To be clear, leaving pain untreated is a serious constitutional violation. McGuckin, 974 F.2d at 1060. However, on the undisputed record before it, the Court finds that at each step of the way the Defendants were attempting in good faith to provide medically adequate treatment.

### C. Monell Liability

Finally, the Court turns to Plaintiff's claims against LVMPD and Naphcare. While § 1983 typically applies to natural persons, both municipal defendants and certain private entities may be held liable under the under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); see id. (explaining municipal liability); Tsao, 1139 (9th Cir. 2012) (explaining liability for private entities). At the threshold of Monell liability, the Plaintiff must be able to show a constitutional violation occurred. Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997); Monell, 436 U.S. at 694. For the reasons outlined above, Mr. Rodriguez has failed to meet his burden to show a material dispute concerning a violation of his constitutional rights. For that reason, the Court similarly grants summary judgement on the Plaintiff's Monell based claims.

### V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Las Vegas Metropolitan Police Department's Motion for Summary Judgement (ECF No. 354) and the Motion for Summary Judgement (ECF No. 355) by Defendants Dr. James Anthony, Dr. Harry Duran, Eric Lopez, Kendra Meyer, Dr. Raymond Mondora, Dr. Larry Williamson, and Naphcare, Inc. are **GRANTED**. The Clerk of Court is instructed to enter judgment in favor of Defendants.

**DATED:** September 30, 2024.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**